1999 ME 197

Robert SAUCIER

v.

ALLSTATE INSURANCE COMPANY.

Supreme Judicial Court of Maine.

Argued Oct. 4, 1999.

Decided Dec. 30, 1999.

William J. Smith, (orally), Van Buren, for plaintiff.

Frank H. Bishop Sr., (orally), Stevens, Engels & Bishop, Presque Isle, for defendant.

Before WATHEN, C.J., and RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶ 1] Allstate Insurance Company appeals from a judgment entered in favor of the plaintiff, Robert Saucier, in the Superior Court (Aroostook County, *Pierson, J.*) following a bifurcated jury trial. In the first portion of the trial, the jury found that Saucier had suffered $200,000 in damages due to the negligence of an underinsured driver. In the second portion of the trial, the jury found that Allstate knowingly misrepresented pertinent facts of its policy provisions relating to Saucier's underinsurance coverage and that Allstate failed to pay an undisputed portion of Saucier's claim. As a result, the court ordered that Allstate pay to Saucier the per person limit of his underinsurance coverage minus the amount he actually received from the negligent driver's insurance company,[1] interest pursuant to 24–A M.R.S.A. § 2436–A(1)(A),[2] the amount of the undisputed medical payments claim plus interest pursuant to 24–A M.R.S.A. § 2436(1) & (3),[3] and costs, disbursements, and attorney's fees pursuant to 24–A M.R.S.A. § 2436–A(1). Allstate argues that the court erred: (1) in its determination that as a matter of law Allstate was not permitted to offset its coverage by the entire per person limit of the tortfeasor's coverage; (2) in its denial of Allstate's motion for judgment as a matter of law that it did not knowingly misrepresent its coverage; (3) in the instructions it gave to the jury; (4) by admitting evidence of Allstate's offer of $11,000 to Saucier in the second portion of the bifurcated trial; and (5) in its award of attorney fees to Saucier in the amount of $16,731.38. Saucier requests a remand for a determination of additional attorney fees associated with postjudgment proceedings and this appeal. We affirm the judgment and remand for a further determination of attorney fees pursuant to 24–A M.R.S.A. § 2436–A(1).

---

1. Saucier's policy provided, "[Allstate] will pay damages for bodily injury, sickness, disease or death which an insured person is legally entitled to recover from the owner or operator of an uninsured auto." The policy further provides, "[d]amages payable will be reduced by ... all amounts paid by the owner or operator of the uninsured auto or anyone else responsible."

2. Title 24–A, section 2436–A in effect during the relevant time period provided in part:
   1. **Civil Actions.** Any person injured by any of the following actions taken by his own insurer may bring a civil action and recover damages, together with costs and disbursements, reasonable attorneys fees and interest on damages at the rate of 1½% per month:
   A. Knowingly misrepresenting to an insured pertinent facts of policy provisions relating to coverage at issue.
   ....
   24–A M.R.S.A. § 2436–A(1)(A) (1990) *repealed and replaced by* P.L.1997, ch. 621, § 1 (effective June 30, 1998).

3. Title 24–A, section 2436 provides in relevant part:
   1. A claim for payment of benefits under a policy of insurance against loss delivered or issued for delivery within this State is payable within 30 days after proof of loss is received by the insurer and ascertainment of the loss is made either by written agreement between the insurer and the insured or by filing with the insured of an award by arbitrators as provided in the policy, and a claim which is neither disputed nor paid within 30 days is overdue, *provided that if during the 30 days the insurer, in writing, notifies the insured that reasonable additional information is required, the undisputed claim shall not be overdue until 30 days following receipt by the insurer of the additional required information[.]
   ....
   3. If an insurer fails to pay an undisputed claim or any undisputed part of the claim when due, the amount of the overdue claim or part of the claim shall bear interest at the rate of 1 ½% per month after the due date.
   24–A M.R.S.A. § 2436(1) & (3) (1990).

## I. BACKGROUND

[¶ 2] In 1994, Saucier was injured in an automobile accident as a passenger in Alden Pelletier's vehicle. Pelletier died as a result of the accident. Two other passengers riding in Pelletier's car were also injured, as well as the driver of another vehicle hit by Pelletier's vehicle.

[¶ 3] Pelletier carried liability insurance with Progressive Insurance Company that had a $25,000 per person limit and a $50,000 per accident limit.[4] Saucier, the two other passengers from Pelletier's vehicle, and the driver of the other car settled with Progressive. Saucier's share of the settlement was $10,594.65. Allstate, Saucier's insurance carrier, consented to this settlement.

[¶ 4] Saucier's insurance with Allstate included uninsured motorist coverage with a per person limit of $50,000 and a per accident limit of $100,000. Saucier provided documentation of his medical bills and lost earnings to Allstate. Ultimately Allstate offered Saucier $10,000 in settlement of his claim, indicating that it was compelled to offset his coverage by the $25,000 limit of Pelletier's per person liability coverage with Progressive and by the $1000 medical payments coverage Saucier had with Allstate. Saucier did not accept this offer, but suggested that it reflected the undisputed portion of his claim and that Allstate should immediately pay that amount. Allstate responded that both the $10,000 and the $1000 were in dispute as it was disputing both damages and coverage.

[¶ 5] Unable to reach an agreement with Allstate, Saucier brought suit against Allstate on three counts. In his complaint, Saucier sought $39,405.35 pursuant to the provisions of his policy with Allstate;[5] the undisputed portion of his claim plus interest as provided in the late payment statute, 24–A M.R.S.A. § 2436; and, alleging that Allstate knowingly misrepresented the extent of his coverage, damages, interest, attorney fees, and costs pursuant to the unfair claims settlement practices statute, 24–A M.R.S.A. § 2436–A.

[¶ 6] Allstate made a motion for a summary judgment and sought a declaratory judgment regarding the amount of the offset to which it was entitled. The trial court denied Allstate's motion for a summary judgment and declared that pursuant to the terms of Saucier's policy, Allstate was only able to reduce Saucier's coverage by the amount he was actually paid by Pelletier, the underinsured motorist. Allstate then made a successful motion for a bifurcated trial in which the jury first determined liability and damages, and then proceeded to the claims regarding Allstate's failure to pay an undisputed portion of a claim and the knowing misrepresentation of pertinent facts of Allstate's policy.

[¶ 7] In the first portion of the jury trial, Saucier presented evidence regarding the circumstances of the accident and his resulting injuries, which included fractured vertebrae and other injuries to his back. Saucier also presented evidence of the damages he incurred as a result of the accident, including approximately $17,000 in medical bills and lost wages because he was unable to continue work as a mill supervisor. He had to find less physically demanding work that paid substantially less. Saucier also presented evidence of his expected future lost wages and medical expenses, which included expenses for continuing physical therapy as well as medications that he would need throughout the course of his life. The jury found that the car accident was the result of Pelletier's negligence and that Saucier suffered past

---

4. Because Saucier carried insurance with Allstate in larger amounts than Pelletier, the parties do not dispute the fact that Pelletier was an "uninsured motorist" pursuant to the statutory definition found in 24–A M.R.S.A. § 2902(1). *See also Day v. Allstate Ins. Co.,* 1998 ME 278, ¶ 7, 721 A.2d 983, 985.

5. This amount reflects the per person liability limit of his uninsured motorist policy (i.e., $50,000) minus the amount he actually received through Pelletier's insurance (i.e., $10,594.65).

and prospective damages in the amount of $200,000.

[¶ 8] In the second portion of the trial, both parties produced evidence regarding the exchange of communications that ensued from Saucier's attempt to collect on his uninsured motorist coverage with Allstate. Over Allstate's objection, Saucier was permitted to introduce evidence of Allstate's settlement offer of $11,000, which represented the $1000 worth of medical payments coverage (that was not dependent on a finding of liability), and $10,000 worth of uninsured motorist coverage. The jury found that Allstate failed to pay an undisputed portion of Saucier's claim—the $1000 medical payment benefit, and that Allstate misrepresented pertinent facts of its policy provisions.

[¶ 9] Allstate filed a motion for a judgment as a matter of law regarding the claim that it misrepresented the extent of Saucier's coverage. The court denied the motion and entered a judgment in favor of Saucier on all claims. Allstate appeals from that judgment.

## II. DISCUSSION

### A. Allstate's Offset

[¶ 10] Saucier's policy with Allstate provides that, with respect to payments pursuant to its uninsured motorist policy, "[d]amages payable will be reduced by ... all amounts paid by the owner or operator of the uninsured auto or anyone else responsible." Allstate argues that this language should be construed to mean reduced by the entire amount available to Saucier but paid out by the underinsured motorist (or the underinsured's insurance company) to *all* claimants, and not just by

that paid to its insured, Saucier.[6] Allstate contends that the trial court erred in holding that, as a matter of law, it could only offset its coverage by the amount actually paid to Saucier by Pelletier's insurance carrier and not by amounts paid to other claimants. In making this argument, Allstate notes that the quoted provision "does not specify who, or to how many claimants, the amount is paid to [*sic*]."

[¶ 11] The meaning of the language used in an insurance contract is a question of law. *See Jack v. Tracy*, 1999 ME 13, ¶ 8, 722 A.2d 869, 871; *Peerless Ins. Co. v. Wood*, 685 A.2d 1173, 1174 (Me.1996). We construe insurance policies liberally in favor of the insured and any ambiguity in the contract is resolved against the insurer. *See Peerless*, 685 A.2d at 1174. We view the language from the perspective of an average person. *See id.*

[¶ 12] Notwithstanding Allstate's observation that the policy provision regarding its offset does not specify to whom "amounts paid" refers, the language is not ambiguous. The court did not err when it determined that pursuant to Allstate's own policy provision, Saucier's coverage could only be offset by the amount that *he* was paid by Progressive, and therefore Allstate's maximum exposure was the difference between the $50,000 per person limit and the $10,594.65 Saucier received from Progressive.

[¶ 13] In support of its construction, however, Allstate cites cases in which the negligent motorist's underinsured *status* was at issue. The two cases on which Allstate principally relies, *Mullen v. Liberty Mut. Ins. Co.*, 589 A.2d 1275 (Me.1991), and *Day v. Allstate Ins. Co.*, 1998 ME 278,

---

6. In negotiations with Saucier, Allstate's position appeared to be that the case of *Mullen v. Liberty Mut. Ins. Co.*, 589 A.2d 1275 (Me. 1991), interpreting the statute defining "uninsured motorist," *abrogated* Allstate's policy provisions regarding offsets available to Allstate reducing the amount owed to its insureds. On appeal, Allstate instead argues that, *pursuant to its own policy provision*

quoted above, Allstate's offset is measured by the per person liability limit of the tortfeasor regardless of the amount actually paid to its insured, citing *Mullen* and other cases applying 24–A M.R.S.A. § 2902(1) (1990) (defining "uninsured motorist") for support. Both positions, however, are in error as discussed *infra*.

721 A.2d 983, indicate that "[t]o determine if a *tortfeasor* is *underinsured,* the court compares the relevant face amounts recited on the insurance policies without considering such factors as the amount of the insured's actual damages, the number of other claimants, or their recoveries." *Day,* 1998 ME 278 at ¶ 7, 721 A.2d at 985 (citations omitted) (emphasis added).[7] In other words, when determining the *negligent motorist's* coverage for purposes of determining his status as an uninsured motorist *pursuant to 24–A M.R.S.A. § 2902(1),* other claimants' actual recoveries, as well as that of the injured party, are disregarded. These cases, however, do not stand for the proposition that, when determining the coverage of the *injured party* pursuant to the *contract provisions* of that individual's uninsured motorist policy, the actual amount of money recovered from the uninsured individual is to be disregarded.[8]

[¶ 14] Additionally, the construction given to the provision by Saucier and the Superior Court is consistent with observations made by this Court in other cases involving underinsurance coverage. In *Tibbetts v. Maine Bonding and Cas. Co.,* 618 A.2d 731 (Me.1992), Maine Bonding argued that it was entitled to an offset pursuant to a clause in its policy similar to the one at issue in this case for sums paid to the insured by a motorist other than the uninsured motorist for injuries not attributable to the uninsured motorist. *Id.* at 733. We held that the insurer was not entitled to an offset for those sums, stating:

> the clause in Maine Bonding's policy effects a reduction only for amounts *recovered* from [the underinsured motorist] or her insurer. Accordingly, to the amount of its policy limits, Maine Bonding's contractual obligation to the Tibbettses is determined by the amount of the Tibbettses' damages that are attributable to [the underinsured motorist], reduced by any *recovery received* from [her] or her insurer.

*Id.* at 734 (emphasis added).

[¶ 15] In *Cobb v. Allstate Ins. Co.,* 663 A.2d 38, 40 (Me.1995), we held that an offset for $25,000 paid to an insured by the tortfeasor applied entirely to the primary insurer whose liability limit was $40,000, and should not be prorated between the primary and secondary insurers. If a secondary insurer is not allowed to reduce its liability by amounts actually *paid* to the insured when those amounts have already been used as an offset by a primary insurer to reduce liability, it would be incongruous to allow an insurer to use amounts that were never paid to its insured as an offset to reduce its liability.[9]

---

7.  Allstate also cites *Simpson v. Hanover Ins. Co.,* 588 A.2d 1183 (Me.1991), a case dealing with the award of prejudgment interest and the reduction of the fee of one of the insured's experts in awarding costs, to support its interpretation of the policy provision. However, in addressing one of the insured's arguments in that case, we noted:

    > The insurance contract clearly provides that although Hanover is potentially liable up to a maximum of $50,000, its liability under the policy would be reduced by *all sums already paid* to Simpson by an underinsured motorist and his insurer. Accordingly, after Simpson's settlement with Miller and Maine Bonding in *the amount* of $25,000, Hanover's maximum potential liability under the underinsured motorist provisions of its contract of insurance with Simpson was reduced to $25,000.

    *Id.* at 1186 (emphasis added). This is consistent with the Superior Court's determination that Allstate's liability only be reduced by the actual amount that Saucier has been paid pursuant to his settlement with Pelletier's insurance company.

8.  Nor do these cases somehow *abrogate* policy provisions governing the extent of coverage once it is determined that coverage exists.

9.  Two cases not cited by Allstate might initially appear to conflict with the Superior Court's interpretation of Allstate's policy provision. In *McGillivray v. Royal Ins. Co.,* 675 A.2d 524 (Me.1996), we were once again called on to apply the definition of "uninsured motorist" in section 2902(1) to determine if uninsured motorist coverage existed. We stated that once a determination was made that the tortfeasor was an uninsured motorist and cover-

[¶ 16] The Superior Court did not err when it held as a matter of contract law that Allstate was required to pay $39,-405.35 to Saucier. *Cf. Buell v. American Universal Ins. Co.*, 224 Conn. 766, 621 A.2d 262, 265 (1993) (addressing similar language in a policy, court held that trial court improperly reduced amount payable to insured by full amount of underinsured's liability limit when a portion of it was paid to someone else).

B. Allstate's Motion for a Judgment as a Matter of Law

[¶ 17] Allstate made two motions for a judgment as a matter of law pursuant to M.R. Civ. P. 50(a) and (b) [10] on Saucier's claim that it knowingly misrepresented the extent of its coverage. The court denied both motions. Allstate argues that the court erred by allowing the issue to go before the jury and by not setting aside the jury's verdict that Allstate knowingly misrepresented pertinent facts relating to Saucier's coverage.

[¶ 18] A motion for a judgment as a matter of law "should not be granted if 'any reasonable view of the evidence could sustain a verdict for the opposing party pursuant to the substantive law that is an essential element of the claim.'" *Lewis v. Knowlton*, 1997 ME 12, ¶ 6, 688 A.2d 912, 913 (quoting *Currier v. Toys 'R' Us, Inc.*, 680 A.2d 453, 455 (Me.1996)). Furthermore, we review the denial of a motion for a judgment as a matter of law, "to determine whether 'by any reasonable view of the evidence, including the inferences to be drawn therefrom, taken in the light most favorable to the non-moving party, the verdict can be sustained.'" *Colvin v. A R Cable Services–ME, Inc.*, 1997 ME 163, ¶ 6, 697 A.2d 1289, 1290 (quoting *Williams v. Inverness Corp.*, 664 A.2d 1244, 1246 (Me.1995)). We have recently stated with regard to M.R. Civ. P. 50(b), "a party seeking a judgment as a matter of law after trial has the burden of establishing that the adverse jury verdict was 'clearly and manifestly wrong.'" *Maine Energy Recovery Co. v. United Steel Structures, Inc.*, 1999 ME 31, ¶ 5, 724 A.2d 1248, 1250 (quoting *Townsend v. Chute Chem. Co.*, 1997 ME 46, ¶ 8, 691 A.2d 199, 202).

[¶ 19] Taken in the light most favorable to Saucier, the facts can and do support the jury's determination that Allstate, through its claim analyst, knowingly misrepresented its obligations pursuant to the terms of its policy. The jury could reasonably conclude that the claim analyst had been directed by Allstate to disregard its policy provisions and reduce claimant's damages by the full liability limit of the

age existed, the insureds "may seek recovery against the insurer ... for their damages in excess of the *dollar limit* of liability insurance on the tortfeasor's vehicle." *Id.* at 526 (emphasis added). However, in that case we held that the tortfeasor was *not* underinsured and therefore no uninsured motorist coverage applied. *See id.* Although the observation constitutes only *dicta*, it would still be a correct statement of the law if only one party made a claim against the tortfeasor and the tortfeasor's insurance company paid the per person policy limit to that party.

In *Botting v. Allstate Ins. Co.*, 1998 ME 58, 707 A.2d 1319, in which the tortfeasor had a per accident limit of $100,000 and the injured insureds had a per accident limit of $300,000 with Allstate, we stated "Hill had $100,000 coverage available for personal injury. Allstate's exposure therefore is controlled by a $200,000 limit per accident." *Botting*, 1998 ME 58, ¶ 7, 707 A.2d 1319, 1322. In *Botting*, however, the insureds *were paid* the full $100,000 available from the tortfeasor, but characterized a portion as attributable to property damage. We held that the Bottings could not reduce the offset available to Allstate from $100,000 to $95,000, when they in fact had been paid $100,000 by the tortfeasor, simply by recharacterizing a portion of it. *See id.*

10. M.R. Civ. P. 50 provides in relevant part:

The court may grant the motion as to any claim if the court determines that, viewing the evidence and all reasonable inferences therefrom most favorably to the party opposing the motion, a jury could not reasonably find for that party on an issue that under the substantive law is an essential element of the claim.

M.R. Civ. P. 50(a) (1999).

underinsured's policy, regardless of the amount paid to the claimant.[11] Although the claim analyst testified that she had been instructed by Allstate that case law, specifically *Mullen,* had somehow abrogated the terms of its policies regarding the measure of offsets, the jury could have rejected this as a credible explanation of Allstate's approach and instead concluded that Allstate was aware of its obligations pursuant to the terms of its policy, but was simply representing otherwise to Saucier.

[¶ 20] Allstate argues that the claim analyst did not *consciously* misrepresent the terms of Saucier's policy because she was relying on directions from Allstate and its representatives. However, this reasoning would enable an insurer to avoid liability for misrepresentations as long as the spokesperson for the company was kept ignorant of the basis of the representations. This is clearly in contravention of the statute. Allstate is responsible for the actions of all its representatives, even when one is merely repeating what another has told her regarding Allstate's policy provisions.

[¶ 21] Allstate also argues that because its representations were based on its interpretation of a question of law, the jury could not have found that it knowingly misrepresented the extent of its coverage. But, as noted above, the jury was not bound to accept Allstate's explanation of its representations. The trial court correctly instructed the jury on the issue of knowing misrepresentation:

> Knowing misrepresentation means to be aware that you are misrepresenting something. In other words, you know the policy says one thing and means one thing but you tell the insured something else.... And in this case, also, the question isn't who is right or wrong or whether Allstate took a position that

was different from Mr. Saucier's.... So this has to be a knowledgeable misrepresentation and awareness that there was a misrepresentation, not a dispute as to what something says.

Having been correctly instructed on Allstate's obligations pursuant to its contract with Saucier, a jury could have found that it knowingly misrepresented the extent of its coverage, notwithstanding the fact that Allstate sought to justify its representations with case law.

[¶ 22] Additionally, because the meaning of policy provisions is always a question of law, Allstate's argument would, in effect, preclude any insurer from being held accountable for its misrepresentations unless the very same policy provisions had been previously construed by this Court. Until that point, the insurer could argue that its policy provisions all involved unresolved questions of law. *But see Seabury Hous. Assocs. v. Home Ins. Co.,* 695 F.Supp. 1244, 1248 (D.Me.1988) (after finding that contract governing coverage was ambiguous, court granted defendant insurer a summary judgment on claim that it failed to pay an undisputed portion of a claim when plaintiff argued that to be disputed, claim had to be disputed in good faith: because language was ambiguous, dispute could not be in bad faith).

[¶ 23] Because Allstate has failed to demonstrate that no reasonable view of the evidence could sustain a jury verdict on Saucier's claim or that the jury's verdict is clearly and manifestly wrong, the trial court properly denied both its motions for a judgment as a matter of law.

C.  The Jury Instructions

[¶ 24] Allstate contends that the court erred in its instructions to the jury on the claim that Allstate knowingly misrepresented pertinent facts regarding its

---

11.  As discussed above, Allstate argues on appeal that it merely disputes the measure of the offset *pursuant to the terms of its policy.* The claim analyst testified, however, that she was under the impression that the terms of the

policy had been "superseded" by case law and that *Mullen* had "changed" the contract between Saucier and Allstate. She went on to indicate that, as a claim analyst, she received such general information from Allstate.

policy provision by including a specific instruction regarding Allstate's obligations pursuant to the terms of its policy and by failing to include an instruction that the jury must find that Saucier was injured by the misrepresentation. Following a request by Saucier for a further instruction, the court gave the jury the following instruction:

> With reference to Question 3 [whether Allstate made a knowing misrepresentation], I would further instruct when you get to the contract provision on page 17, which reads damage payable will be reduced by all amounts paid by the owner or operator of the covered auto or anyone else responsible, you are not called upon to attempt to construe the contract. That is a matter of law, and that's the judge's job. And as a matter of law, the contract requires Allstate to deduct the $10,594.65 from the $50,000 coverage. So, the question before you is whether Allstate knew that's what they were supposed to do and they knowingly misrepresented that they were supposed to first deduct Mr. Pelletier's $25,000 coverage before deducting the $10,000. So, that's the issue before you.

Additionally, in response to Allstate's request that the court instruct the jury that they must also find that Saucier suffered an injury, the court stated that at that point in the trial there was an injury as a matter of law, and therefore declined to give the requested instruction.

[¶ 25] "We review jury instructions in their entirety to determine if they are adequate, taking into consideration the total effect created by the instructions and the potential for jury misunderstanding." *Wheeler v. White,* 1998 ME 137, ¶ 6, 714 A.2d 125, 127 (citations omitted) (internal quotation marks omitted); *see also State v. Huntley,* 681 A.2d 10, 14 (Me.1996), *cert. denied,* 519 U.S. 1064, 117 S.Ct. 702, 136 L.Ed.2d 623 (1997) (stating that Court does not view challenged instruction in isolation). As stated above, "[t]he meaning of language in an insurance policy is a question of law." *Jack,* 1999 ME 13, ¶ 8, 722 A.2d 869, 871. Title 14, section 1105 states, "[d]uring a jury trial the presiding justice shall rule and charge the jury, orally or in writing, upon all matters of law arising in the case." 14 M.R.S.A. § 1105 (1980).

[¶ 26] The trial court found as a matter of law, following the jury's determination of liability and damages, that Allstate was required by its contract to deduct the actual amount of money paid by Pelletier's insurance from Saucier's $50,000 coverage. To simply tell the jury that the contract speaks for itself, as Allstate requested, would have left more room for misunderstanding on the part of the jury and it may have resulted in the jury making its own determination regarding Allstate's obligations pursuant to its contract, a legal determination clearly not within its province. It was not error for the court to state what the contract required of Allstate, rather than let the jury guess on a question of law.

[¶ 27] Nor did the court err by declining to give an instruction regarding the element of injury in a claim brought pursuant to the unfair claims settlement practices statute.[12] While it is clear that

---

12. In addition to the instruction quoted above, the court previously described the determination to be made by the jury on the knowing misrepresentation claim at several points in its instructions, thus:

> [D]id Allstate Insurance Company knowingly misrepresent that Mr. Saucier's insurance policy required Allstate to first deduct Alden Pelletier's $25,000 per person coverage from Mr. Saucier's $50,000 per person coverage to determine what coverage was left to insure Mr. Saucier?
> . . . .
> In other words, you know the policy says one thing and means one thing but you tell an insured that it says something else and means something else and you're aware that there is a difference.
> . . . .
> [I]t is an issue as to whether there was a legitimate dispute as to how to interpret the

an injury is one of the elements of a claim pursuant to 24–A M.R.S.A. § 2436–A, injury necessarily existed by virtue of Saucier being forced to bring suit as a direct result of the misrepresentation.[13] In other words, but for Allstate's misrepresentation (knowing or not) regarding the extent of coverage, Saucier would not have been forced to bring a claim to enforce the terms of the contract. It was clear that Saucier had been injured by the misrepresentation; the only remaining question for the jury was whether Allstate's misrepresentation of its obligations regarding coverage was willful or inadvertent. It was not necessary for the court to instruct the jury that it had to find injury, as it necessarily existed.

[¶ 28] "As long as the instructions are 'substantially correct and the legal situation is made clear to the jury' the decision not to amplify an instruction is reviewed only for an abuse of discretion." *Rich v. Fuller*, 666 A.2d 71 (Me.1995). The trial court did not abuse its discretion in refusing to instruct the jury on an element of the claim that had necessarily been satisfied. The jury instructions with respect to Saucier's claim of knowing misrepresentation on the part of Allstate were adequate and properly delineated the question facing the jury at that stage in the proceeding.

**D. Allstate's Offer of $11,000 to Saucier**

[¶ 29] Allstate argues that the trial court should have excluded evidence pursuant to M.R. Evid. 403 [14] of Allstate's offer of $10,000 in underinsurance coverage and $1000 in medical payments coverage in settlement of Saucier's claim, as it served to confuse and inflame the jury

despite its relevance. Trial courts are afforded wide discretion when applying the balancing test established in Rule 403. *See State v. Ifill*, 574 A.2d 889, 891 (Me. 1990); Field & Murray, *Maine Evidence*, § 403.1 at 99 (4th ed.1997). Although the trial court should be more predisposed to exclusion when the danger is confusing the jury, *see* Field & Murray, *supra*, § 403.1 at 101 (citing *State v. Grigsby*, 666 A.2d 503 (Me.1995)), we will only vacate an evidentiary ruling if the trial court committed a clear abuse of discretion. *See Ifill*, 574 A.2d at 891 (citations omitted).

[¶ 30] Once the issues of liability and damages were decided in the first portion of the trial, the court allowed evidence of the communications between Saucier and Allstate, including Allstate's offer of settlement, in the second portion of the trial in which the jury was asked to determine whether Allstate had withheld payment on an undisputed portion of Saucier's claim. Allstate argues that the only information that should have been made available to the jury was the fact that Allstate had made an offer of settlement in an undisclosed amount that Saucier had rejected. Allstate contends that disclosing the amount to the jury served to inflame them when compared to the large amount of damages previously found.

[¶ 31] During the second portion of the trial, however, the jury was well aware of the extent of Saucier's coverage, $50,000 less the offset of roughly $10,000, notwithstanding the $200,000 in damages found to exist. Secondly, the jury was being asked to determine what *amount*, if any, of Saucier's claim was undisputed by Allstate. Allstate's communications regarding the

---

policy.... So, this has to be a knowledgeable misrepresentation and awareness that there was a misrepresentation, not a dispute as to what something says.

**13.** In response to Allstate's request for an instruction on the element of injury, the court replied: "I would find as a matter of law that there's been injury because just by virtue of— just by bringing the lawsuit."

**14.** Maine Rules of Evidence, Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." M.R. Evid. 403.

two types of coverage available to Saucier and its estimation of the amounts to which Saucier was entitled are highly probative on this point. Withholding such details from the jury's consideration may have caused more confusion than including them, precisely because two types of coverage were involved in the overall settlement offer. This is borne out by the jury's determination that only the $1000 worth of medical payments coverage, that was not dependent on a determination of liability, constituted an undisputed portion of Saucier's claim.

[¶ 32] The danger of unfair prejudice, if any, does not substantially outweigh the probative value of the details of Allstate's offer to Saucier, including its amount. The trial court did not commit an abuse of discretion when it admitted evidence of the specifics of Allstate's offer on the question of whether Allstate failed to pay an undisputed portion of a claim.

E. Attorney Fees

[¶ 33] Following a hearing in which Allstate examined Saucier's attorney under oath concerning his fees, the trial court entered a judgment for Saucier in which it ordered that Allstate pay Saucier's attorney fees and costs associated with the knowing misrepresentation claim in the amount of $16,731.38.[15] Allstate argues on appeal that only a portion of this amount is attributable to work regarding the knowing misrepresentation claim and that this amount is separable from amounts associated with such things as the liability and damages issues.

[¶ 34] The unfair claims settlement practices statute provides for the award of reasonable attorney fees, as well as costs and disbursements, incurred as a result of any of the unfair claims settlement practices described by the statute. 24–A M.R.S.A. § 2436–A(1) (1990). A trial court's determination of attorney fees is reviewed for an abuse of discretion. *See Colquhoun v. Webber,* 684 A.2d 405, 412 (Me.1996); *Monopoly, Inc. v. Aldrich,* 683 A.2d 506, 510 (Me.1996); *Nadeau v. Rainbow Rugs, Inc.,* 675 A.2d 973, 977 (Me. 1996).

[¶ 35] Saucier's attorney presented a clear and detailed accounting of his fees and expenses to the trial court, and Allstate had the opportunity to examine him under oath regarding them. Saucier's attorney testified that all of his work was necessary to all of the claims and that he could not compartmentalize the work he had performed. Given the broad discretion allowed trial courts in the award of attorney fees, it does not appear that the court abused its discretion in allowing Saucier's attorney fees, necessarily concluding that all were associated with the unfair claims settlement practices claim.

[¶ 36] Saucier requests that we remand this matter for a determination of additional attorney fees and costs associated with postjudgment proceedings and this appeal. Because we find that such fees and costs are within the contemplation of consumer protection statutes such as the unfair claims settlement practices statute and help fulfill its remedial purpose, we agree that remand is appropriate on this one issue. *See Beaulieu v. Dorsey,* 562 A.2d 678, 680 (Me.1989); *Colony Cadillac & Oldsmobile, Inc. v. Yerdon,* 558 A.2d 364, 368–69 (Me.1989).

The entry is:

Judgment affirmed. Remanded to the Superior Court for the determination of attorney fees and costs associated with postjudgment proceedings and this appeal pursuant to 24–A M.R.S.A. § 2436–A(1).

---

**15.** The trial court also ordered that Allstate pay $1000 in attorney fees associated with Saucier's claim that Allstate failed to pay an undisputed portion of his claim. The parties agreed to this amount separately and it does not appear to be in dispute.