STATE OF MAINE

WALDO, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-98-026
DHM-WAL-4/9/2001

DAIRYLAND INSURANCE
COMPANY,

     Plaintiff

  v.

DANIEL E. CHRISTENSEN, *et al.,*

     Defendants

  v.

ALLSTATE INSURANCE COMPANY,

     Third-Party Defendant

**DECISION AND ORDER**

STATE OF MAINE
Waldo County Superior Court

APR 0 9 2001

REC'D AND FILED
Joyce M. Page, Clerk

This matter is before the court upon motion of third-party defendant Allstate Insurance Company for summary judgment on third-party plaintiffs' amended third-party complaint. On June 23, 1997, Daniel Christensen operated his motor vehicle such as to collide with a motor vehicle being operated by Tammy J. Curtis on the Back Belmont Road in Belfast. Christensen had five passengers and Tammy Curtis had one passenger who was killed in the accident. Dairyland Insurance Company had issued an automobile liability insurance policy on behalf of the Christensen vehicle. The cumulative claims of all deceased and injured parties far exceeded the policy limits of the Dairyland policy. On June 5, 1998, by its complaint, Dairyland Insurance Company filed an interpleader with this court seeking a determination of the rights of the various parties with respect to the limits of the policy.

In its answer of July, 1998, on behalf of Tammy Curtis, Lawrence Curtis, and the estate of Loretta Rumney, these defendants brought a third-party complaint against Allstate Insurance Company who had issued a liability insurance policy to Curtis's vehicle and which policy provided underinsured motorist coverage. The Dairyland policy limits were $20,000 for single person and $40,000 for single occurrence. The Allstate underinsured motorist coverage had a policy limit of $100,000 individual and $300,000 single occurrence. Allstate paid $80,000 each to Curtis and the Rumney estate under the terms of the its coverage but the third-party plaintiffs demanded that Allstate pay them additionally the sum of $20,000, in other words, the full amount of their coverage. On that claim, Allstate brought a motion for summary judgment.

On May 10, 1999, this court granted Allstate's motion for summary judgment relying upon *Mullen v. Liberty Mutual*, 589 A.2d 1275 (Me. 1991) and *McGillivray v. Royal Insurance*, 675 A.2d 524 (Me. 1996). Its decision interpreted those cases to clearly establish that the extent of a tortfeasor's protection from liability is determined by the face amount in the liability policy and the dollar limit of the liability policy on the tortfeasor's vehicle as compared to the dollar limit provided by the underinsured motorist liability insurance on the vehicle to determine not only whether an injured party is underinsured but the extent to which the

2

underinsured status is covered by the injured party's policy. The decision was appealed by third-party plaintiffs.[1]

On December 30, 1999, the Law Court issued its decision in *Saucier v. Allstate Insurance Co.*, 742 A.2d 482 (Me. 1999). That case, as in the instant case, involved multiple claims. *Saucier* interpreted the language of the Allstate policy to mean that the claimants' coverage could only be offset by the amount that he was paid by the tortfeasor's liability coverage and therefore Allstate's maximum exposure was the difference between the per person limit in the underinsured motorist coverage and the amount actually received from the liability carrier. The Court distinguished *Mullen* by explaining that it held that "[t]o determine if a tortfeasor is underinsured, the court compares the relevant face amounts recited on the insurance policies without considering such factors as the amount of the insured's actual damages, the number of other claimants, or their recoveries." *Day v. Allstate*, 721 A.2d 983 (Me. 1998). Therefore, the offset to which Allstate was entitled under the terms of the policy was only the amount actually received by the claimants and not the policy limit.

Sometime in the Fall of 1999, the claimants agreed to a settlement of their claims against Christensen leaving a balance of $11,357.73 between the amount already paid by Allstate plus the amount paid by Dairyland and Allstate's underinsured limit of $200,000 for both claimants. Shortly after the *Saucier*

---

[1] The appeal was preliminarily dismissed as being premature but the procedural infirmities were resolved and the appeal was pending as of December, 1999.

decision, Allstate advised the claimants that the Law Court decision was contrary to Allstate's position in this litigation and it offered to pay the difference between the remaining underinsured motorist coverage and the amounts claimants were to receive in their settlement with Christensen.[2]

By letter dated January 19, 2000, Allstate advised third-party plaintiffs that it stood ready to pay the $11,357.73 to the estate representing the full amount of its remaining obligation in light of the settlement of the claims against Christensen. By letter dated January 24, 2000, counsel for third-party plaintiffs expressed his displeasure with placement of the burden of settlement on third-party plaintiffs and made a demand for the full $40,000 stating, "Allstate's obligation is, was and always has been $40,000. IT IS NOT $40,000 MINUS SOME OFFSET!" Counsel goes on to threaten Allstate that if it disputes the obligation to pay the $40,000 then it must pay the undisputed $11,357.73 and litigate the rest. If Allstate does so counsel makes it clear that it would sue Allstate for the difference, challenging its release issued at the time of the receipt of the $80,000, initiate litigation under the Fair Claims Practices Act, and expect Allstate to provide interest, costs, and attorney's fees.

It is unclear when Allstate paid the $40,000 but on July 12, 2000, third-party plaintiffs amended their third-party complaint. Count I alleges unfair claims settlement practices under 24-A M.R.S.A. § 2436-A. Count II claims interest on overdue payment under late payment provision of 24-A M.R.S.A. § 2436. Count III

---

[2] Curiously, third-party plaintiffs' counsel wrote by letter dated December 30, 1999, terms of proposed settlement with Dairyland which includes a proposed consent by Allstate to litigate the reduced amount of $11,357.73.

4

alleges breach of contract. Count IV alleges unfair trade practices. Count V seeks punitive damages as well as damages for intentional infliction of emotional distress.

In its motion for summary judgment, Allstate denies that it failed to "effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear." 24-A M.R.S.A. § 2436-A(1)(E). Allstate argues that it has a right to litigate an open question of law or disputed facts for which there is a reasonable or probable cause for belief. Furthermore, Allstate maintains that it may insist upon such a judicial determination of open questions of law or fact without incurring a penalty for so proceeding. It cites a number of cases in other jurisdictions for the proposition that it has a right to litigate appropriate issues. It also points out that statutes requiring insurance companies to adjust claims fairly and promptly and to make a reasonable offer to settle claims are penal in nature and will be strictly construed. *Citing Burne v. John Hancock Mutual Life Ins. Co.,* 403 A.2d 775 (Me. 1979). Allstate argues that it was only after the Law Court decided *Saucier* and clarified the law that it had reasonable belief that its previous interpretation of prior provisions was incorrect and that it immediately so advised third-party plaintiffs' counsel. It denies that it did not pay claims within a reasonable period of time when presented and points out that it paid $80,000 to each of the claimants promptly.

Allstate denies that it knowingly misrepresented the terms of the policy. Until *Saucier* decided the precise terms of the policy, it believed it was a matter proper for litigation. Allstate argues it did not continue the appeal after the *Saucier*

5

decision but was most responsible for seeing that the appeal was dismissed and they did not violate the late-pay statute inasmuch as they tolled the running of the 30-day requirement by notifying the insured that it disputed the insured's claim. Allstate further argues that it cannot be held to a breach of contract since it has paid the entire underinsured motorist policy limits, nor can it be held to be a violation of Maine's Unfair Trade Practices Act since it is clear that the statute does not apply to Allstate since insurance is a regulated industry.

In its amend third-party complaint, the claimants assert that third-party defendant is in violation of its post-complaint agreement under the terms of the releases agreed upon by the parties at the time of the payment of the $80,000. The language in issue says:

> Notwithstanding the aforesaid, releasees agree that the releasor may pursue through legal action against releasees a claim for up to $20,000 (plus interest is allowed by 14 M.R.S.A. § 1602 and § 1602-A . . .) Releasees in no way or manner acknowledge or agree that they are legally obligated to pay such an additional sum, and intend to deny all liability in connection therewith.

Allstate resists the claim for two reasons. First, section 1602 pertains to pre-judgment interest and section 1602-A pertains to post-judgment interest. Payment under this policy has been paid without judgment in this matter and therefore the provisions are not applicable. Allstate relies upon *Trask v. Automobile Insurance Co.*, 736 A.2d 237 and *Simpson v. Hanover Insurance Co.*, 588 A.2d 1183 (Me. 1991) for the proposition that the statute does not allow for pre-judgment interest on the claim on an underinsured motorist policy where the judgment with addition would exceed the policy limits.

6

Third-party plaintiffs respond with a number of assertions of fact primarily based upon counsel's interpretation of the intent of the parties behind the releases, his understanding of relationships with counsel for Allstate, and other subjective matters which are neither consistent with the actions of Allstate nor his correspondence with Allstate over the periods in question. At the time of argument on the motion before the initial summary judgment, third-party plaintiffs were more than willing to accept in full satisfaction of the policy requirements an amount representing the difference between the remaining policy limits of the Allstate underinsured motorist policy and the amount actually received from the tortfeasor and/or his carrier. Allstate then relied upon the decision of this court while the matter was pending on appeal. Upon issuance of the *Saucier* decision, Allstate clearly advised third-party plaintiffs that it was prepared to pay the difference as originally requested. Furthermore, this amount was determined by Allstate after it had been represented to Allstate by claimants' counsel the results of its negotiations with Christensen. For whatever reason, claimants refused to proceed to that settlement, demanded that Allstate pay the full amount, including costs of litigating the issue, made a final demand for the full policy limits and threatened to amend third-party plaintiffs complaint with an exact replica of the complaint in *Saucier*.

It must be noted that *Saucier* contained fundamental liability issues from the first dollar. *Saucier* involved refusal by Allstate to pay an undisputed portion of the claim. Indeed, it was disputing coverage as well. Further, there was a conclusion by

the court that Allstate was deliberately disregarding its policy provisions by instructions from its corporate leadership. The instant matter is a decidedly different case than *Saucier*.

This court is not satisfied that Allstate was unreasonable in its reliance upon *Mullen*. Indeed, this court continued that reliance. There is no evidence that Allstate was motivated by malice. Indeed, it very promptly paid the $80,000 to remove any issue of fundamental coverage from the case. It did nothing to prolong litigation nor did it unreasonably delay matters by insisting that it was not required, as a matter of law, to pay its full policy limits and rely on subrogation to resolve its dispute. Indeed, this was clearly recognized by the claimants when they executed the releases and received their $80,000. There is no evidence in this case of corporate "foot-dragging" or any evidence that there is an unreasonable interpretation of law or policy language.

For all of the reasons so stated, the entry will be:

Third-party defendant Allstate Insurance Company's motion for summary judgment is GRANTED.

Dated: April 5, 2001

Donald H. Marden
Justice, Superior Court

8

JAMES FORTIN, ESQ. FOR ALLSTATE INS. CO.
P.O. BOX 7108
PORTLAND, MAINE  04112-7108


DAVID M. GLASSER, ESQ. FOR CURTIS AND RUMNEY ESTATE
P.O. BOX 1212
CAMDEN, MAINE  04843-1212