STATE OF MAINE                                                    SUPERIOR COURT
ANDROSCOGGIN, ss.          RECEIVED & FILED              CIVIL ACTION
                                                         Docket No. CV-03-177
                                 NOV 1 6 2004            ᴱ ᴬᴳ ᴬⱽᴰ ᴵ ᵘᵍₐⱼₑ꜀ᵞ

GENDRON REALTY and         ANDROSCOGGIN
DOLARD and DAVID GEND**SUPERIOR COURT**
            Plaintiffs
                                              **ORDER ON PLAINTIFFS'**
v.                                                **MOTION FOR**
                                              **SUMMARY JUDGMENT**
MAINE BONDING & CASUALTY COMPANY,                        DONALD L. C
            Defendant                                    Lᵢ₩ᵢ.

                                                           DEC 1 2004

## PROCEDURAL HISTORY AND BACKGROUND

On September 22, 2003, Gendron Realty and Dolard and David Gendron filed a three-count complaint against Maine Bonding and Casualty Company (Maine Bonding) in the Androscoggin County Superior Court. In their complaint, the plaintiffs asserted that Gendron Realty was a named insured on a Maine Bonding commercial general liability policy, and that Maine Bonding had refused to provide a defense to them after they were sued by Tommy Bureau. The complaint alleged breach of contract, violation of Maine's late payment statute, 24-A M.R.S.A. § 2436, and violation of one of its unfair claims practices statutes, 24-A M.R.S.A. § 2436-A. Maine Bonding filed its answer to the complaint on October 27, 2003, and generally asserted that it had had no duty to defend the claim against the plaintiffs by Mr. Bureau. In addition, Maine Bonding asserted three affirmative defenses against the claim.

The plaintiffs filed a motion for partial summary judgment on August 18, 2004. That motion was accompanied by a supporting statement of material facts (PSMF). On September 7, defendant requested and received permission to extend the deadline for filing its opposition to this motion. On September 17, 2004, defendant filed its opposition to the plaintiffs' motion for summary judgment, and its own cross-motion

for summary judgment on Counts II and III of the plaintiffs' complaint. That opposition included responses to all of the PSMF, and thirteen additional statements of material fact (DASMF). On October 1, plaintiffs requested and received permission to extend the deadline for filing their response to the defendant's filing. They filed a reply to the opposition, and a response to the cross-motion on October 8, 2004, including their response to the DASMF. On October 15, 2004, the defendant filed a reply in support of its cross-motion for summary judgment.

## DISCUSSION

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact . . . and that [a] party is entitled to judgment as a matter of law." M.R. Civ. P. 56(c). In determining whether this burden has been met, the court must view the record in the light most favorable to the nonmoving party, and must accept as true the uncontroverted facts properly appearing in the record. *Champagne v. Mid-Maine Med. Ctr.*, 1998 ME 87, ¶ 5, 711 A.2d 842, 844.

After review of the record, including the court file in the underlying action brought by Mr. Bureau, the court finds that much of this case may be decided as a matter of law.

The record in this case permits the court to find the following: On January 5, 2000, Tommy Bureau filed suit against Gendron Realty and against Dolard and David Gendron. (For purposes of simplicity, Gendron Realty and the individual Gendrons will be referred to as "the Gendrons.") PSMF 4. The complaint included allegations of events that occurred during a period when Gendron Realty was a named insured on a Maine Bonding commercial general liability policy. Court file, AND CV-00-003; PSMF 3. The Gendrons provided Maine Bonding with timely notice of the suit. PSMF 6. The

2

Gendrons filed an answer to the complaint on February 2, 2000. At that time, they were represented by Attorney Susan Oram. Court file, AND CV-00-003.

On or about May 12, 2000, Maine Bonding accepted the defense of the suit under a reservation of rights. PSMF 7. In its reservation of rights letter, Maine Bonding stated that it was providing a defense because Mr. Bureau's suit included a claim of emotional distress, and that it "[reserved] the right to withdraw from the defense of this lawsuit if the count for negligent infliction of emotional distress [was] dismissed." DASMF 1.[1] Attorney Martica Douglas entered her appearance as co-counsel for the Gendrons on May 22, 2000. Court file, AND CV-00-003.

The Bureau trial began on October 7, 2002; ten days later, the court granted a directed verdict to the Gendrons on six of the seven counts that had been presented during the trial.[2] PSMF 8 and 9. During jury deliberations, one juror notified the court of another juror's possible misconduct. Attorney Douglas moved for a mistrial. The court denied that motion. *Bureau v. Gendron*, 2003 ME 145, ¶¶ 3, 4, 837 A.2d 138, 139. On October 21, 2002, the jury awarded Mr. Bureau $650,000 on the remaining claim for breach of contract. PSMF 10. That same day, Maine Bonding notified the Gendrons that it would not indemnify them for that verdict. PSMF 11.

Attorney Douglas filed a motion for judgment as a matter of law or new trial on October 28, 2002, and, on October 30, 2002, filed a revised motion that included allegations of juror misconduct. Bureau opposed that motion. In an order dated January 3, 2003, the court granted the Gendrons' motion, based upon juror misconduct,

---

[1] Before the trial started, Maine Bonding reiterated this position to the Gendrons, and explained that a judgment against them might not be within the policy coverage. DASMF 3.

[2] The Gendrons' motion for summary judgment would have disposed of those claims before trial. That motion was unsuccessful because they failed to provide a sufficient statement of material facts. *Bureau v. Gendron*, 2001 ME 157, 783 A.2d 643.

3

and rescheduled the case for trial during the month of April 2003. In its order, the court stated that the case would be submitted only on the claim for breach of contract. PSMF 12.

Bureau filed a motion for reconsideration on January 13, 2003. On the same date, before a final judgment was entered, Maine Bonding informed the Gendrons that it would no longer provide them a defense. PSMF 13. Nonetheless, Attorney Douglas filed an opposition to the motion for reconsideration on January 22, 2003. (Court file, AND CV-00-003.) Over the next two weeks, Attorney Douglas continued to respond to Bureau's multiple filings with the court. (Court file, AND CV-00-003.) The court denied the motion for reconsideration on February 25, 2003. (Court file, AND CV-00-003.) On February 27, 2003, Mr. Bureau filed a motion for report to the Law Court. The court denied that motion on March 11, 2003. (Court file, AND CV-00-003.)

The Gendrons were required to assume the cost of the defense of the retrial; they retained new counsel to provide that defense. PSMF 16, as qualified by defendant's response. On March 6, 2003, Attorney Douglas filed a motion for leave to withdraw. On the same date, Attorneys William Kayatta, Jr. filed his appearance as counsel for the Gendrons. The motion to withdraw was granted on March 11, 2003. (Court file, AND CV-00-003).

On March 31, 2003, Bureau filed a Notice of Appeal. In that notice, he stated:

> Plaintiff appeals the Trial Court's refusal to report this case to the Law Court pursuant to M.R. App. P. 24(c).
>
> The Court abused its discretion and lacked the ability to rule due to required recusal. The Plaintiff also appeals the Court's grant of a new trial and denial of Plaintiff's Motion for Reconsideration for New Trial which would have been heard had the motion to report been properly determined.

4

On April 3, 2003, the Chief Justice of the Maine Supreme Court dismissed that appeal as interlocutory and premature. (Court file, AND CV-00-003.)

On April 22, 2003, Bureau filed his trial brief, which discussed the contract claim as well as the three original tort claims that alleged emotional distress. (Court file, AND CV-00-003.) The Gendrons responded to those claims in their trial brief by quoting the court's order of January 3, 2003. (Court file, AND CV-00-003.) The new trial justice[3] agreed that only the contract claim would be retried.

On May 2, 2003, the second trial resulted in a verdict in favor of the Gendrons. PSMF 17. On May 15, 2003, Mr. Bureau filed a notice of appeal to the Law Court that stated:

> Notice is hereby given that Tommy Bureau, who is the Plaintiff in this proceeding, hereby appeals to the Supreme Judicial Court of Maine, sitting as the Law Court, the Order for New Trial dated January 3, 2003, Thomas E. Delahanty, II, Judge and the finding by the Court that there was jury bias. Plaintiff also seeks to reinstate the judgment and jury verdict entered on October 22, 2002, and to order, as moot, or vacate, the proceedings subsequent to the court's grant of a new trial dated January 3, 2003.

(Court file, AND CV-00-003; Exhibit B attached to Poliquin affidavit.) On or about May 6, 2003, the Gendrons asked Maine Bonding to assume their defense on the appeal. PSMF 18. Maine Bonding did not agree to that demand. PSMF 19, as qualified.

Two months into the appeal process, Maine Bonding offered to have Attorney Douglas take over the defense of the appeal, under a continuing reservation of rights. PSMF 23, as qualified. In a letter dated July 15, 2003, Maine Bonding wrote to the Gendrons and stated:

> Since, however, the pending appeal arises out of events which occurred during the course of the first trial, I have recommended that [we]

---

[3] Justice Delahanty recused himself when attorneys from the firm of Pierce Atwood entered their appearances.

assume the defense of the appeal, and I understand that [we] will request [the original attorney] to handle the appeal.

Exhibit G, attached to Poliquin affidavit. The Gendrons explained to Maine Bonding that they had lost confidence in their original trial counsel, believed that, if they had initially had an adequate defense they could have avoided trial altogether, and were concerned that counsel provided by Maine Bonding would win the appeal in a manner that would lead to a finding that the Gendrons were not covered. PSMF 25, 26, and 27, as qualified. In a letter dated August 1, 2003, Maine Bonding again wrote to the Gendrons:

> Under the circumstances, I believe your refusal to allow [original trial counsel] to handle the pending appeal is unjustified and unreasonable. I do not therefore believe that Maine Bonding has any responsibility for legal fees incurred by [you] in connection with the appeal.

Exhibit H, attached to Poliquin affidavit. The Gendrons declined to have Attorney Douglas handle the appeal, and retained the services of the firm that had represented them during the second trial. PSMF 24.

The trial court's decision to grant a new trial, and the subsequent verdict in the Gendrons' favor were affirmed by the Law Court in a decision dated December 11, 2003. PSMF 30; *Bureau v. Gendron*, 2003 ME 145, 837 A.2d 138. In defending the second trial and the appeal, the Gendrons incurred attorney fees in excess of $170,000. PSMF 31. Maine Bonding has not reimbursed the Gendrons for any portion of those fees. PSMF 32.

A.    Gendrons' Motion for Summary Judgment on Count I

The purchase of an insurance policy is intended to provide two different types of protection: protection from being required to pay the damages for any acts that fall within the terms of the policy; and protection from the costs of defending any lawsuit that could fall within the policy coverage. *Northern Sec. Ins. Co., Inc v. Dolley*, 669 A.2d

6

1320, 1322 (Me. 1996). Whether an insurer is required to provide to its insured protection from the costs of defense, *i.e.*, whether it has a duty to defend, is a question of law. Whether the duty exists is to be determined at the initiation of the suit, by comparing the allegations in the complaint with the provisions of the policy in question. An insured is entitled to a defense "if there exists any legal or factual basis, which could be developed at trial, that would obligate the [insurer] to pay under the policy." *L. Ray Packing Co. v. Commercial Union Ins. Co. et al.*, 469 A.2d 832, 833 (Me. 1983).

In limited circumstances an insurer may avoid a duty to defend by establishing, before the conclusion of the underlying action, that ultimately it would have no duty to indemnify. The "limited circumstances" cited by the Law Court are prior criminal convictions for murder, attempted murder or sexual abuse of a child, nonpayment of a premium, cancellation of a policy, failure to cooperate, or failure to notify. *Northern Sec. Ins. Co., Inc v. Dolley*, 669 A.2d 1320, 1322 (Me. 1996). None of those circumstances exist in this case. Nonetheless, Maine Bonding has argued that its duty to defend the Gendrons ended with the granting of their motion for a new trial.

In support of its position that its duty to defend ended with the first trial, Maine Bonding cited *Gibson v. Farm Family Mut. Ins. Co.*, 673 A.2d 1350 (Me. 1996).[4] It asserted that Gibson stood for the proposition that an insurer's obligation to defend does not extend to non-covered claims if the defense of those non-covered claims is segregable from the defense of potentially covered claims. What the Law Court actually stated was slightly different:

---

[4] Although the *Gibson* ruling stops short of this case, it is the only Maine case directly on point. Maine Bonding's reliance upon *Conway Chevrolet-Buick, Inc. v. Travelers Indemnity Co.*, 136 F.3d 210 (1st Cir. 1998) is misplaced. In that decision, Justice Coffin, applying Massachusetts law, held that an insurer could withdraw following an entry of summary judgment on those portions of the claim covered by the policy. Because Massachusetts applies a different test in determining whether an insurer has a duty to defend, this decision is not helpful.

7

We previously have held that in some circumstances the duty of an insurance company to defend one count in a lawsuit imposes a duty to defend all counts. *On the facts of this case, we reject Farm Family's request that we refine our previous ruling by declaring that an insurer has no duty to defend noncovered counts.* In this case all of the neighbors' claims against the Gibsons arise from common issues of fact. All counts involve a dispute over the existence of an easement across the Gibsons' property and the consequences of that dispute to the neighbors and the neighbors' property.

Contrary to Farm Family's assertions, the cost to the Gibsons of defending themselves in court against their neighbors cannot be readily apportioned between the neighbors' claims seeking clarification of title and the neighbors' claims seeking damages for tortious interference with a potential buyer, for trespass to confront potential buyers concerning the easement, and for a property interest deprivation in violation of their civil rights. The trial court did not err as a matter of law in refusing to apportion the costs of covered and noncovered counts and in awarding to the Gibsons as damages for Farm Family's breach of its contract the costs of defending all counts in the underlying action brought by the neighbors.

*Id.* at 1354. (Citations omitted.) (Emphasis added.) Maine Bonding has acknowledged that, when the trial court peeled away all of Bureau's tort claims in the middle of trial, termination of its duty to defend was neither possible nor appropriate. It maintains, however, that this decision by the initial trial court, in combination with the trial court's limitation of the new trial to the contractual claim, permitted an easy apportionment of defense costs between itself and the Gendrons.

This clean and logical argument is hampered by the messy reality of this case. As discussed in the recitation above, the original trial court did grant judgment as a matter of law to the Gendrons on Bureau's tort claims after the completion of his case in chief. In addition, after determining that the verdict on the remaining contract claim could not stand, the original trial court did limit the issues for the second trial to the remaining contract claims. However, neither of those rulings was final. M.R. Civ. P. 54(b), which governs both rulings, states:

> Except as otherwise provided in paragraph (2) of this subdivision and in Rule 80(d), when more than one claim for relief is presented in an

8

action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, except those enumerated in paragraph (2) of this subdivision and in the last sentence of Rule 80(d), which adjudicates less than all the claims or the rights and liabilities of less than all the parties shall not terminate the action as to any of the claims or parties, *and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.*

(Emphasis added.) Bureau realized the rulings were not final; he requested that the original trial court report its decision on the new trial to the Law Court, pursuant to M.R. App. P. 24(c), and he included the tort claims in the brief he filed at the start of the second trial. Court file, AND-CV-00-003.

The lawsuit initiated by Bureau did not end with the first trial, or even with the second trial. It did not end until the Law Court issued its final judgment in December 11, 2003. Maine Bonding had an on-going duty to defend the Gendrons throughout this period.[5] By withdrawing its defense while the case was still pending, it breached its contractual obligation to the Gendrons.

B.  Maine Bonding's Motion for Summary Judgment on Counts II and III

In Count II of their complaint, the Gendrons cited 24-A M.R.S.A. § 2436, and claimed that, by failing to continue providing a defense, Maine Bonding was in violation of that statute. In Count III, they made a similar argument concerning 24-A M.R.S.A. § 2436-A.

Title 24-A M.R.S.A. § 2436(1) and (3) states, in pertinent part:

A claim for payment of benefits under a policy or certificate of insurance delivered or issued for delivery in this State is payable within 30 days

---

[5] Based upon this ruling, this court does not address Gendrons' arguments that Maine Bonding was obliged to defend the contract claim, even if the other claims had been removed finally from the case.

after proof of loss is received by the insurer . . . . A claim that is neither disputed nor paid within 30 days is overdue.

If an insurer fails to pay an undisputed claim or any undisputed part of the claim when due, the amount of the overdue claim or part of the claim bears interest at the rate of 1 ½% per month after the due date.

An insurer is permitted to dispute a claim by providing a written statement explaining the dispute and the grounds for the dispute. 24-A M.R.S.A. § 2436(2). Whether this statute applies only to first party type coverage, as asserted by Maine Bonding, or to the type of dispute here, as asserted by the Gendrons, is immaterial. Maine Bonding provided timely written notice to the Gendrons that their claim to have a defense provided to them was disputed. DASMF 1, 3, 5. The withdrawal of that defense, even if inappropriate, does not trigger the provisions of this statute.

The Gendrons have also argued that, by withdrawing its defense, Maine Bonding triggered one of the provisions of 24-A M.R.S.A. § 2436-A (1). In their response to DASMF 7, 8, 9, and 10, they stated:

[I]t is the entirety of Maine Bonding's conduct over the life of the Bureau case, including but not limited to its unauthorized and continuing refusal to provide plaintiff with a defense to that case after the count for negligent infliction of emotional distress was dismissed, and not solely Maine Bonding's failure to compensate plaintiffs for the legal bills they incurred on retrial and appeal, that violated and continues to violate the late payment statute . . . .

In support of this denial, they cited paragraphs 1 through 36 of their complaint. Those paragraphs, however, do not include any allegations of conduct except the withdrawal of defense, and the refusal to reimburse the Gendrons for the costs they incurred in defending the second trial and the appeal. Maine Bonding has argued that, as a matter of law, the allegations made by the Gendrons cannot give rise to a claim under this statute.

10

The Maine Unfair Claims Settlement Practices Act, 24-A M.R.S.A. § 2436-A, states that an insured who has been injured by any one of five types of failures by its insurer may "bring a civil action and recover damages, together with costs and disbursements, reasonable attorney's fees and interest on damages at the rate of 1 1/2% per month." The Gendrons have alleged that Maine Bonding's actions violated subsections (1)(A), (1)(B), and (1) (D). Each will be discussed separately.

The failing described in Subsection (1)(A) is: "Knowingly misrepresenting to an insured pertinent facts or policy provisions relating to coverage at issue." In some circumstances, an insurer's interpretation of the terms of a policy may give rise to claims of conscious misrepresentation. *See Saucier v. Allstate Ins. Co.*, 1999 ME 197, 742 A.2d 482. However, in order to establish that type of claim, the Gendrons would have to "generate an issue of fact that the insurer knew the policy said and meant one thing but told the insured something else." *Curtis v. Allstate*, 2002 ME 9, ¶ 24, 787 A.2d 760, 767. A mere dispute between the parties concerning the meaning of policy language is insufficient. *Id.* On this record, there is no factual basis for a claim of knowing misrepresentation.

Title 24-A M.R.S.A. § 2436-A (1)(B) and (D) state that an insured is entitled to damages, reasonable attorneys' fees, and prejudgment interest if the insurer, fails to "acknowledge or review claims, which may include payment or *denial of a claim . . . within a reasonable time* following receipt of written notice" or fails to "affirm or *deny coverage . . . within a reasonable time . . . .*" (Emphasis added.) The issue presented by this case is whether the insurer's withdrawal from the suit, and its refusals to provide a defense for either the second trial or the appeal[6] violated either subsection (B)

---

[6] There is a dispute concerning this "refusal." Maine Bonding did offer to have the original trial counsel step in at some point. The Gendrons refused, for reasons that are discussed above.

11

or (D). After consideration of *Curtis*, and *Saucier, supra*, the court is convinced that that question must be resolved by the fact-finder, because it depends on whether the insurer's conduct was reasonable. In reaching this decision, the fact-finder will be able to consider the course of conduct between the parties, the complexity of the underlying litigation, the timing of Maine Bonding's withdrawal, and the timing and reasonableness of its offer to have Attorney Douglas step back into the case.

## ORDER

For the reasons stated above, plaintiffs' motion for partial summary judgment is granted as to Count I of their complaint. The extent of their damages is left to trial.

Maine Bonding's motion for partial summary judgment is granted as to Count II of plaintiffs' complaint, granted as to that portion of Count III that refers to 24-A M.R.S.A. § 2436(A)(1)(A), and denied as to the remainder of Count III.

The clerk is directed to incorporate this order by reference in the docket for this case.

Dated: November 16, 2004

Ellen A. Gorman
Superior Court Justice

12