1998 ME 204

Jerald E. GREENVALL, Personal Representative of the Estate of Carla Madore

v.

MAINE MUTUAL FIRE INSURANCE COMPANY.

Supreme Judicial Court of Maine.

Submitted on Briefs June 15, 1998.

Decided Aug. 6, 1998.

Kevin J. Beal, Prett, Flaherty, Beliveau & Pachios, LLC, Portland, for plaintiff.

William J. Kelleher, Augusta, for defendant.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, and SAUFLEY, JJ.

CLIFFORD, Justice.

[¶ 1] Jerald E. Greenvall, the personal representative of the estate of Carla Madore, appeals from a summary judgment entered in the Superior Court (Kennebec County, *Alexander, J.*) in favor of Maine Mutual Fire Insurance Company (Maine Mutual) on his complaint asserting breach of contract, bad faith and late payment claims. We agree with Greenvall's contention that there is a genuine issue of material fact on the breach

of contract claim, and therefore we vacate the judgment on Count I of the complaint. We affirm the judgment on Counts II and III of the complaint.

[¶ 2] The following material facts are undisputed. On or about February 11, 1995, Carla Madore died as a result of injuries sustained when her car collided with a truck driven by James Donahue. At the time of accident, Madore was insured under an automobile liability policy issued by Maine Mutual which provided Madore with $300,000 of uninsured motorist coverage.[1] Donahue was insured under a policy issued by Maryland Casualty Insurance Company (Maryland Casualty) with a bodily injury limit for liability coverage of $100,000. Pursuant to the medical payments provision of Madore's policy, Maine Mutual paid $4,939 to Madore's estate for funeral expenses. Maine Mutual then notified Maryland Casualty that Maine Mutual was subrogated to the estate's claim for the funeral expenses.

[¶ 3] In January 1996, Maryland Casualty paid $100,000 to Madore's estate. In consideration of the payment, Greenvall executed a release of claims against Maryland Casualty, James Donahue, and Linda Donahue.[2] The release provided that "it [was] intended to release not only all claims against [Maryland Casualty, James Donahue, and Linda Donahue] but also that portion of any claim against any other person for which such other person may make claim against [Maryland Casualty, James Donahue, and Linda Donahue] for contribution, indemnification, subrogation or otherwise." The estate did not obtain Maine Mutual's consent prior to the settlement. The attorney for the estate notified Maine Mutual of the settlement and stated that the estate would accept $200,000 (the difference between the $300,000 uninsured coverage in the Maine Mutual policy and the $100,000 liability coverage in the Maryland Casualty policy) in full settlement of the estate's claim.

[¶ 4] After settlement negotiations failed, the estate filed a complaint against Maine Mutual, asserting claims for breach of contract (Count I), bad faith (Count II), and violation of 24–A M .R.S.A. § 2436 (1990), the late payment statute (Count III). Following a hearing on the parties' cross-motions for summary judgment, the court found that Greenvall had "released the claims that he might bring against the [underinsured motorist] carrier and, there is no outstanding unpaid judgment[.]" Based on these two findings, the court concluded that there could be no breach of the Maine Mutual policy. The court also concluded that Greenvall would "be held to the words which he agreed to and the benefits of his bargain which include termination of any action to recover, based on the tortfeasor's negligence, against the underinsured carrier." Finally, the court held that there was no violation of the late payment statute, since Maine Mutual's payment obligation had been released. From the summary judgment in favor of Maine Mutual, Greenvall filed this appeal.

[¶ 5] The entry of a summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, referred to in the statements required by [M.R.Civ.P.] 7(d) show that there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law." M.R.Civ.P. 56(c). On appeal from a grant of summary judgment, we view the evidence in the light most favorable to the nonprevailing party, and review the trial court decision for errors of law. *See Jacques v. Pioneer Plastics, Inc.*, 676 A.2d 504, 506 (Me.1996). "We independently determine whether the record supports the conclusion that there is no genuine issue of material fact and that the prevailing party is entitled to a judgment as a matter of law." *Id.*

## I. Breach of Contract

[¶ 6] The Maine Insurance Code requires that all automobile liability policies issued or delivered for issuance in this State contain:

---

1. The term "uninsured motorist coverage" refers to the coverage mandated by 24–A M.R.S.A. § 2902(1) (1990 & Pamph.1997).

2. Linda Donahue is the owner of the vehicle James Donahue was driving at the time of the accident.

coverage ... for the protection of persons insured thereunder *who are legally entitled to recover* damages from owners or operators of uninsured, underinsured or hit-and-run motor vehicles, for bodily injury ... including death, resulting from the ownership, maintenance or use of such uninsured, underinsured or hit-and-run motor vehicle.

24–A M.R.S.A. § 2902(1) (1990 & Pamph. 1997) (emphasis added). In compliance with section 2902(1), the policy issued to Madore provided that Maine Mutual would pay Madore or her legal representative for damages that she was "legally entitled to recover" from an owner or operator of an uninsured motor vehicle.[3] This appeal presents an issue closely related to one we expressly declined to decide in *Wescott v. Allstate Ins.*, 397 A.2d 156 (Me.1979), namely "whether an insured has the right to bring a direct action against her insurer" without first proceeding against the uninsured tortfeasor. *See id.* at 161 n. 4.

▮ [¶ 7] The purpose of section 2902 is to permit an insured the same recovery that would have been available to her had the tortfeasor been insured to the same extent as the insured. *See Tibbetts v. Maine Bonding & Cas. Co.*, 618 A.2d 731, 734 (Me.1992). To effectuate this intent, we construe section 2902 "liberally in favor of the insured victim and strictly against the insurer...." *Wescott*, 397 A.2d at 169. Any ambiguity in the phrase "legally entitled to recover" must be construed in favor of the insured. *See Reese v. Preferred Risk Mut. Ins. Co.*, 457 S.W.2d 205, 208 (Mo.Ct.App.1970). The uninsured motorist coverage provision in the policy issued to Madore states that Maine Mutual "will pay under this coverage only after the limits of liability under any applicable bodily injury liability bond or policy have been exhausted *by payment of judgments or settlements.*" (emphasis added). At a minimum,

this language implies that a judgment against the underinsured tortfeasor is not the only means of triggering Maine Mutual's contractual obligation. Moreover, because the insured's legal entitlement to recovery against the underinsured motorist and the insurer's contract liability can be resolved in a single action, considerations of judicial economy militate against requiring a judgment against the underinsured tortfeasor before suit may be brought against the insurer. *See State Farm Mut. Auto. Ins. Co. v. Griffin*, 51 Ala.App. 426, 286 So.2d 302, 306 (1973).[4]

▮ [¶ 8] The majority of jurisdictions hold that an insured may be "legally entitled to recover" from an underinsured motorist without obtaining a judgment against that motorist. *See, e.g., Swift v. Dairyland Ins. Co.*, 250 Neb. 31, 547 N.W.2d 147, 151 (1996); *State Farm Mut. Auto. Ins. Co. v. Shrader*, 882 P.2d 813, 821 (Wyo.1994); *see also* 9 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 123:17 at 123–43, –44 (3d ed. 1997) ("In the context of an uninsured motorist claim, 'legal entitlement' does not mean 'judgment;' rather, the insured must demonstrate fault by the tortfeasor and the extent of damages. but is not required to obtain a judgment against the tortfeasor....") (footnotes omitted); 8C John A. Appleman & Jean Appleman, Insurance Law & Practice § 5089 at 336 (1981) ("The majority of jurisdictions do not make the procuring of such a judgment a mandatory condition precedent to enforcing one's rights under the policy."). In the past, we have assumed that a judgment against the tortfeasor was not a precondition to the insured's right to recover uninsured or underinsured motorist benefits. *See, e.g., Skidgell v. Universal Underwriters Ins. Co.*, 1997 ME 149, 697 A.2d 831; *Cobb v. Allstate Ins. Co.*, 663 A.2d 38 (Me.1995). Although there are states that do require a

---

3. The Maine Mutual policy defines "uninsured motor vehicle" to include a motor vehicle "[t]o which a bodily injury liability ... policy applies at the time of the accident" provided the "limit for bodily injury liability [is] less than" the uninsured motorist coverage in the Maine Mutual policy. *See also* 24–A M.R.S.A. § 2902(1) (defining "underinsured motor vehicle").

4. The parties have not raised the issue and we do not decide whether the tortfeasor is an indispensable party in the insured's action against its insurer to recover pursuant to uninsured motorist coverage.

judgment,[5] we join those jurisdictions that hold that obtaining a judgment against the tortfeasor is not the insured's sole means of establishing legal entitlement to recover for purposes of uninsured motorist coverage.[6]

[¶ 9] Maine Mutual contends that Greenvall's settlement with Donahue and his insurer and the release of all claims arising out of the accident barred recovery pursuant to the uninsured motorist coverage in the Maine Mutual policy. Despite disavowing any intention to rely on Greenvall's breach of the "no consent to settlement" clause,[7] Maine Mutual's fundamental position is that the release prejudiced its subrogation rights, which the "no consent to settlement" clause is designed to protect. *See Wescott*, 397 A.2d at 168.

[¶ 10] In *Wescott*, the plaintiff was injured when the car she was riding in collided with an uninsured automobile. After settling with the driver's insurance company, the plaintiff sought additional compensation from her insurance carrier pursuant to the uninsured motorist coverage in her policy. We rejected the insurer's attempt to rely on the "no consent to settlement" clause as a defense to the plaintiffs action:

> Insofar as the clause restricts the insured's right to compromise and settle his claim against financially responsible motorists who might be liable to him, it is contrary to the purpose of the statute, is against public policy and unenforceable. To permit third party settlements to work a forfeiture of the uninsured motorist protection would destroy the very purpose which the. Legislature sought to achieve, i.e. financial responsibility up to policy limits to the extent of the satisfaction of such damage as the insured is legally entitled to recover from an uninsured motorist. We agree with such rationale.
>
> We believe the reasoning of those courts which reject such liability limiting clauses as the no-consent-to-settlement exclusion is more in line with the policy and purpose of Maine's uninsured vehicle coverage statute. Hence, we hold that the no-consent-to-settlement exclusion clause contained in the Allstate–Wescott policy is no defense where the insured settled with a person other than the uninsured tortfeasor.

*Wescott*, 397 A.2d at 167–68 (citations omitted) (footnote omitted).We expressly declined to determine the enforceability of such a clause when the insured settles with and releases the uninsured tortfeasor. *See id.* at 167 n. 8; *see also Hare v. Lumbermens Mut.*

---

5. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Lorenz*, 202 Ga.App. 123, 413 S.E.2d 782, 784 (1991) (holding that a judgment against a known uninsured motorist is a condition precedent to the insured's action to recover pursuant to uninsured motorist coverage); *United Serv. Auto. Ass'n v. Nationwide Mut. Ins. Co.*, 218 Va. 861, 241 S.E.2d 784, 788 (1978) ("[The insured] could not have sued [her uninsured motorist carrier] on her policy until she had obtained a judgment against the tort-feasor.").

6. We recognize that language in *Simpson v. Hanover Ins. Co.*, 588 A.2d 1183 (Me.1991), suggests a result contrary to the one we reach here. In that case, we held that the trial court did not err by waiving the insurer's liability for pre-judgment interest when that interest would have increased the insurer's liability beyond the coverage provided in the contract. *See id.* at 1186–87. In rejecting the insured's attempt to distinguish *Nunez v. Nationwide Mut. Ins. Co.*, 472 A.2d 1383 (Me.1984), we observed that "the insurance contract[ ] provided that the insurer would not be obligated to pay until such time as a judgment was rendered against the tortfeasor ...." *Simpson*, 588 A.2d at 1186. To the extent this quoted language implies that a judgment against the tortfeasor is a condition precedent to recovery under uninsured motorist coverage, we decline to follow it. We hasten to point out, however, that the insured, in a direct action against the insurer, must demonstrate "legal entitlement" to recover against the tortfeasor. *See* 3 Alan I. Widiss, Uninsured and Underinsured Motorist Insurance § 34.1 at 106 (2d ed.1995). Professor Widiss writes:

> Thus, in order to prevail against an insurance company when there is a dispute about whether a claimant is "legally entitled to recover," the insured is in a position comparable to that which would have existed if the tortfeasor had been covered by liability insurance in the amount of the applicable underinsured motorist coverage and a suit asserting the tort claim had been brought against the alleged tortfeasor.

*Id.*

7. The "no consent to settlement" clause in the policy reads as follows: "We do not provide Uninsured Motorist Coverage for 'bodily injury' sustained by any person ... [i]f that person or the legal representative *settles* the 'bodily injury' claim without our consent."

*Cas. Co.,* 471 A.2d 1041, 1043 n. 2 (Me.1984). Later, in *Bazinet v. Concord Gen. Mut. Ins. Co.,* 513 A.2d 279 (Me.1986), we noted "the split of authority on the question whether insurers may rely on 'no-consent to settlement' clauses to deny coverage to insureds who settle with an uninsured motorist tortfeasor without consent." *Id.* at 281–82. We further observed that "[t]he purpose of such clauses, however, is almost exclusively to protect the insurer's subrogation rights against the party released. When the insurer's subrogation rights are unaffected by the settlement, courts may not permit such clauses to defeat the claims of insureds." *Id.* at 282 (citations omitted).

■■■■ [¶ 11] The better view, held by many courts, is that a successful invocation of the "no consent to settlement" clause defense requires the insurer to demonstrate prejudice from the insured's failure to obtain the insurer's consent before settling with the tortfeasor. *See, e.g., Galinko v. Aetna Cas. & Sur. Co.,* 432 So.2d 179 (Fla.Dist.Ct.App. 1983) (applying North Carolina law), *MacInnis v. Aetna Life & Cas. Co.,* 403 Mass. 220, 526 N.E.2d 1255 (1988); *Sorensen v. Farmers Ins. Exch.,* 279 Mont. 291, 927 P.2d 1002 (1996). As one leading commentator notes:

> There is now a significant body of judicial precedents for the proposition that in order to justify foreclosing an insured's right to indemnification from an otherwise applicable underinsured motorist insurance coverage, an insurer must show that it was prejudiced by the settlement of the tort claim.

3 ALAN L. WIDISS, UNINSURED AND UNDERINSURED MOTORIST INSURANCE § 43.5 at 346–47 (2d ed.1995); *but see Stevens v. Merchants Mut. Ins. Co.,* 135 N.H. 26, 599 A.2d 490, 492–93 (1991) (holding that no consent to settlement clause is enforceable without showing of prejudice to insurer); *see generally* Annotation, *Validity, Construction, and Effect of "No–Consent–To–Settlement" Exclusion Clauses in Automobile Insurance Policy,* 18 A.L.R.4th 249 (1982 & Supp.1997). "If [Maine Mutual] had no right to withhold its consent from the settlement, then it could suffer no prejudice from [Greenvall's] failure to seek that consent." *MacInnis,* 526

N.E.2d at 1259. Where the tortfeasor has no substantial assets, the insurer must consent to a proposed settlement and then pay the insured whatever amounts are due under the policy. *Id.* at 1259–60. "The settlement terminates the insurer's repayment claim against the tortfeasor, but causes no prejudice because the tortfeasor has no remaining substantial assets with which to reimburse the insurer." *Id.* at 1260. The essential rationale of the majority rule is that:

> A judgment against [an impecunious tortfeasor] would not have been worth the paper it was printed on and no reasonable person would have expended the costs, let alone the attorney's fees, it would have required to get it. When [insurer] lost the opportunity to secure the judgment, it lost nothing. Under our law, a technical and illusory "loss" of this kind cannot result in the forfeiture of insurance coverage.

*Southeastern Fidelity Ins. Co. v. Earnest,* 395 So.2d 230, 231 (Fla.Dist.Ct.App.1981).

■■■■ [¶ 12] This majority rule is not only persuasive, but also consistent with our own insurance law jurisprudence. In several related contexts, we have held that an insurer must demonstrate prejudice before relying on the insured's breach of a policy provision to deny coverage. *See, e.g., Marquis v. Farm Family Mut. Ins. Co.,* 628 A.2d 644, 650 (Me.1993) (holding that insurer must "demonstrat[e] prejudice before it is relieved from its obligation to pay based on the insured's request to delay an examination under oath."); *Ouellette v. Maine Bonding & Cas. Co.,* 495 A.2d 1232, 1235 (Me.1985) (insurer must show breach of notice provision and resultant prejudice). We now extend that rule: When an insured settles with an underinsured tortfeasor, the insurer must demonstrate prejudice as a result of the loss of subrogation rights before the insurer may deny recovery under the policy. *See MacInnis,* 526 N.E.2d at 1260–61.

■■■■ [¶ 13] Whether Maine Mutual was prejudiced by the loss of subrogation rights against Donahue is a genuine issue of material fact that precludes the entry of a summary judgment. *See Marsh v. Prestige Ins. Group,* 58 Ill.App.3d 894, 16 Ill.Dec. 390, 374 N.E.2d 1268, 1269 (1978); *Ouellette,* 495 A.2d

at 1235. Here, Greenvall's statement of material facts indicates that the attorney for the estate conducted an investigation into Donahue's financial situation; that the investigation confirmed that Donahue lacked significant assets, but did have substantial credit card debt; that Donahue owned no real property in the State; and that Donahue was working only part-time and did not have "significant income or assets." Viewed in the manner most hospitable to Greenvall, this evidence created a genuine issue of material fact concerning the value of any subrogation rights that Maine Mutual lost as a result of the release. A summary judgment on Greenvall's breach of contract claim was entered in error.[8]

## II.  Bad Faith and Late Payment Statute Violations

■ [¶ 14] Greenvall argues that the court erred as a matter of law by entering judgment in favor of Maine Mutual on the estate's bad faith claim. Although we have previously "refuse[d] to recognize an independent tort of bad faith resulting from an insurer's breach of its duty to act in good faith and deal fairly with an insured[.]" *Marquis v. Farm Family Mut. Ins. Co.*, 628 A.2d 644, 652 (Me.1993), the third count of Greenvall's complaint sets forth a freestanding claim for "bad faith." In *Marquis*, we noted that an insurer's duty of good faith and fair dealing arises from an implied covenant in the insurance contract, and limits "an insured's remedies for breach of the duty to the traditional remedies for breach of contract, and the additional statutory remedies provided in the insurance code." *Id.* Even viewed in the light most favorable to Greenvall, the evidence was insufficient to establish that Maine Mutual breached its contractual duties by acting in bad faith or unfairly. *Cf. Chiapetta v. Lumbermens Mut. Ins. Co.*, 583 A.2d 198, 202 (Me.1990).

■ [¶ 15] Finally, contrary to Greenvall's contentions, the trial court did not err by granting judgment to Maine Mutual on Greenvall's late payment claim. Maine Mutual's obligations pursuant to the late payment statute, 24–A M.R.S.A. § 2436(1) (1990), arise only after ascertainment of the loss is made. There is no evidence in the record of such ascertainment, either by agreement or arbitration award, and certainly the claim was disputed. Accordingly, the trial court did not err as a matter of law by granting a summary judgment to Maine Mutual on the late payment claim. *See Baybutt Constr. Corp. v. Commercial Union Ins. Co.*, 455 A.2d 914, 917 (Me.1983).

The entry is:

Judgment vacated in part, affirmed in part. Remanded for further proceedings consistent with this opinion.

---

8. Maine Mutual also advances an additional argument that requires but brief comment. According to Maine Mutual, the release and the acceptance of the settlement payment from Maryland Casualty by Greenvall each constitutes an "accord and satisfaction" of all of the estate's claims, including claims against Maine Mutual pursuant to the policy. "[A]n accord 'is a *contract* under which an obligee promises to accept a substituted performance in future satisfaction of the obligor's duty.'" *Stultz Elec. Works v. Marine Hydraulic Eng'g Co.*, 484 A.2d 1008, 1011 (Me.1984) (*quoting* Restatement (Second) of Contracts § 281 (1981)). Maine Mutual was not a party to this settlement and did not provide consideration for the release executed by Greenvall. Maine Mutual is not entitled to enforce the release against Greenvall.