### Rosemerie S. LAMONTAGNE and Donald Lamontagne, Plaintiffs

v.

### NORTH AMERICAN SPECIALTY INSURANCE CO., Defendant

No. CIV.04–192–P–C.

United States District Court, D. Maine.

Jan. 31, 2005.

---

Robert A. Laskoff, Laskoff & Associates, Scott A. Quigley, Laskoff & Associ-

ates, Lewiston, ME, for Rosemerie S Lamontagne, Donald Lamontagne, Plaintiffs.

Christopher C. Dinan, Monaghan Leahy, LLP, John S. Whitman, Richardson, Whitman, Large & Badger, Portland, ME, for Nationwide Mutual Insurance Company, North American Specialty Insurance Company, Defendants.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GENE CARTER, Senior District Judge.

Plaintiffs Rosemerie S. Lamontagne and Donald Lamontagne commenced this action against Defendants Florence M. Bourget, Nationwide Mutual Insurance Co. (hereinafter "Nationwide"), and North American Specialty Insurance Co. (hereinafter "NAS") in the Superior Court of the State of Maine in and for the County of Androscoggin. Defendants timely removed the case to this Court. This Court previously entered summary judgment in favor of Nationwide (Docket Item No. 18), leaving NAS as the only remaining Defendant in this action.[1] Now before the Court is Defendant NAS's Motion for Summary Judgment (Docket Item No. 19). For the reasons set forth below, the Court will deny Defendant's Motion.

## I. Facts

This case arises out of a January 23, 2002, automobile accident involving cars driven by Plaintiff Rosemerie Lamontagne and Ms. Bourget. The principal cause of the accident was Ms. Bourget's negligence. At the time of the accident, Plaintiff Rosemerie Lamontagne was driving her own vehicle while in the course of her employment with Alternative Services–Northeast, Inc., a company that operates group homes for persons with disabilities. Plaintiff Rosemerie Lamontagne sustained injuries and incurred medical expenses and other damages as a result of the accident.

Ms. Bourget's automobile was insured under an auto insurance policy issued to her by Allstate Insurance Company. The Allstate policy had coverage limits of $100,000 per person and $300,000 per accident. Plaintiffs settled their claims with Allstate in return for a payment of $100,000 from the Allstate policy.[2] Also existing at the time of the accident was a business auto policy issued to Plaintiff Rosemerie Lamontagne's employer, Alternative Services–Northeast, by NAS. The terms of this policy are the source of the present dispute.

NAS first received notice that the Plaintiffs were making a claim under its business auto policy on October 28, 2003, when it received by fax an Automobile Loss Notice form. By letter dated November 3, 2003, NAS advised Alternative Services–Northeast that there was no uninsured motorist ("UM") coverage for Ms. Lamontagne because she was driving her own car at the time of the accident. NAS sent a copy of the November 3 letter along with requested policy provisions to Plaintiffs' attorney. Absent from the policy provisions sent to Plaintiffs' attorney was an endorsement, Commercial Auto Form No. CA 99 33 07 97, which was in effect at the time of the accident and altered the business auto coverage form. The crux of the present dispute surrounds whether this endorsement has the effect of entitling Plaintiff Rosemerie Lamontagne to cover-

---

1. Prior to removal, the state court granted Defendant Bourget's Motion to Dismiss.

2. Plaintiffs' own insurance carrier, Nationwide, was dismissed from this action after the

parties agreed that the Maine Law Court's holding in *Cobb v. Allstate Ins. Co.,* 663 A.2d 38 (Me.1995), entitled Nationwide to a 100% setoff for Allstate's payment of $100,000.

age under the NAS policy. Plaintiffs allege that the Court should answer this question affirmatively, and to also find that NAS knowingly misrepresented policy provisions to Plaintiffs in violation of Maine's Unfair Claims Settlement Practices Statute, 24–A M.R.S.A. § 2436–A. NAS contends that the endorsement is not applicable to Plaintiffs' claims; thus, the argument goes, there is no coverage under the policy and failure to furnish the endorsement was harmless because it is inapplicable to Plaintiffs.

## II. Summary Judgment Standard

"The role of summary judgment is to look behind the facade of the pleadings and assay the parties' proof in order to determine whether a trial is required." *Plumley v. S. Container, Inc.,* 303 F.3d 364, 368 (1st Cir.2002). Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party." *Navarro v. Pfizer Corp.,* 261 F.3d 90; 93–94 (1st Cir.2001) (quoting *McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir.1995)). "A trialworthy issue exists if the evidence is such that there is a factual controversy pertaining to an issue that may affect the outcome of the litigation under the governing law, and the evidence is 'sufficiently open-ended to permit a rational factfinder to resolve the issue in

favor of either side.' " *De–Jesus–Adorno v. Browning Ferris Indus.,* 160 F.3d 839, 841–42 (1st Cir.1998) (quoting *Nat'l Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 735 (1st Cir.1995)).

## III. Discussion

Resolution of the coverage portion of the present dispute requires evaluation of the NAS policy within the statutory framework of 24–A M.R.S.A. § 2902(1).

### a. The Policy as it Existed Pre–Endorsement

Under the original version of the policy, there are no genuine issues of material fact opposing the position that Plaintiff Rosemerie Lamontagne was not an insured. The liability portion of the policy specifically excluded "[y]our 'employee' if the covered 'auto' is owned by that 'employee' or a member of his or her household." The uninsured motorists portion of the policy defined "insureds" as follows:

1. You

2. If you are an individual, any "family member."

3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto." The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

4. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured."

Acting on a similar case involving an employee injured in an automobile accident during the course of her employment, the First Circuit addressed whether the employee was entitled to uninsured motorist coverage under a policy issued to her employer with identical language to the language in the NAS policy. *See Seaco Ins. Co. v. Davis–Irish,* 300 F.3d 84, 85–86 (1st

Cir.2002). The First Circuit found the uninsured motorist terms unambiguous and held that the employee could not recover insurance benefits under her employer's policy. *Id.* at 88. That precedent requires a similar finding here. Plaintiffs attempt to distinguish the NAS policy from the holding in *Seaco* on the basis of an endorsement to the NAS policy.

### b. Endorsement CA 99 33 07 97

■ Plaintiffs allege that an endorsement to the above referenced policy substantively changed the definition of an "insured" and thus entitles Plaintiff Rosemerie Lamontagne to coverage. Specifically, endorsement CA 99 33 07 97 modifies the Business Auto Coverage Form as follows:

> With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

> The following is added to the **Section 1—Liability Coverage,** Paragraph 1.[sic] **Who Is An Insured** provision:

> Any "employee" of yours is an "insured" while using a covered "auto" you don't own, hire or borrow in your business or your personal affairs.

Plaintiffs allege that the effect of this endorsement is to bring Ms. Lamontagne within the bounds of the NAS policy. Defendant disputes this reading of the endorsement, and further asserts that even if the endorsement did bring Ms. Lamontagne under the policy for purposes of liability, she is not entitled to UM benefits, as the endorsement, by its terms, does not expand the scope of UM benefits. However, Plaintiffs contend that under Maine law, the endorsement must apply to the UM portions of the policy. In support of their position, Plaintiffs cite 24–A M.R.S.A. § 2902(1), which states:

> No policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle shall be delivered or issued for delivery in this State with respect to any such vehicle registered or principally garaged in this State, unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured, underinsured or hit-and-run motor vehicles, for bodily injury, sickness or disease, including death, resulting from the ownership, maintenance or use of such uninsured, underinsured or hit-and-run motor vehicle. The coverage herein required may be referred to as "uninsured vehicle coverage." For the purposes of this section, "underinsured motor vehicle" means a motor vehicle for which coverage is provided, but in amounts less than the minimum limits for bodily injury liability insurance provided for under the motorist's financial responsibility laws of this State or less than the limits of the injured party's uninsured vehicle coverage.

*Id.*

Defendant relies on *Cash v. Green Mountain Ins. Co., Inc.,* 644 A.2d 456 (Me. 1994) for the proposition that uninsured motorist coverage need not be coextensive with the liability coverage as to any person who could be an insured under the liability coverage. Defendant's Motion for Summary Judgment at 4. The Court, having reviewed the *Cash* decision and the statutory provision at issue in *Cash,* does not find Defendant's interpretation of *Cash* persuasive. In *Cash,* Defendant Green Mountain Insurance Company issued automobile insurance policies covering two of the three vehicles owned by Plaintiff Cash and her husband. *Id.* at 457. The third vehicle was insured by a different company at significantly lower uninsured motorist

coverage limits. *Id.* Plaintiff sought payment pursuant to the higher UM coverage limits contained in the Green Mountain policies. Green Mountain declined to provide coverage pursuant to a provision in the policy excluding coverage for injuries suffered while occupying a vehicle owned by the insured or a family member but not covered by the policy. *Id.* Plaintiff Cash sought a declaration that the other-owned vehicle exclusion was void under 24–A M.R.S.A. § 2902–A(4).[3] The Law Court upheld the exclusion and found in favor of Green Mountain.

The Court notes that the Plaintiff in *Cash* did have uninsured motorist coverage available to her, but with policy limits lower than those provided in the Green Mountain policies. Thus the *Cash* court addressed the issue of whether an "other-owned vehicle" exclusion violated the UM statute, an issue different from the one presently before the Court. Defendant's reliance on *Moody v. Horace Mann Ins. Co.*, 634 A.2d 1309 (Me.1993), is similarly misplaced. The insurance policies at issue in *Moody* also contained uninsured motorist coverage; rather, the issue in *Moody* was an anti-stacking clause. In neither *Cash* nor *Moody* was the issue whether an insurance policy could offer only liability coverage and not uninsured motorist coverage to a select group of insureds under the Maine statute.

 The Court finds little merit in Defendant's contention that "it is the *policy* that cannot be without ... [uninsured motorist] coverage, not any particular *individual.*" Defendant's Reply Memorandum in Support of Motion for Summary Judgment (Docket Item No. 31) at 4 (emphasis in original). Title 24–A M.R.S.A. § 2902(1) specifically provides uninsured motorist coverage "for the protection of *persons* insured thereunder who are legally entitled to recover damages ...." (emphasis added); *see also Wescott v. Allstate Ins.*, 397 A.2d 156, 170 (Me.1979) (section 2902 "explicitly states without any equivocation whatever that each liability policy must supply the minimum degree of protection of persons insured thereunder ....").[4] There are genuine issues of material fact regarding whether the endorsement entitles Plaintiff Rosemerie Lamontagne to liability coverage. Furthermore, for purposes of summary judgment, the Court does not find as a matter of law that Defendant's policy complies with section 2902(1), and does not find, as Defendant suggests, that the policy prevents Plaintiffs from stating a claim for uninsured motorist benefits. Because "the uninsured motorist statute is to be construed so as to

**3.** 24–A M.R.S.A. § 2902–A(4) has subsequently been replaced by 24–A M.R.S.A. § 2902–D (Supp.1993). The statute as it read at the time of the accident giving rise to the *Cash* suit stated:

Coverage for family members must be offered. An insurer may not sell or renew a motor vehicle liability insurance policy on or after January 1, 1992 with a provision that excludes coverage for injury to the insured or any family member unless the insurer offers the opportunity to remove that exclusion by buying coverage in the nonliability section of the policy for economic damages for injury to the insured or any family member. This optional coverage must be available in monetary increments limited to no more than the liability limits of the policy for liability to other persons.

**4.** Defendant contends that it is "by no means clear that there would have been coverage for Ms. Lamontagne under Section II of the Business Auto Coverage Form—Liability Coverage." Defendant's Reply Memorandum in Support of Motion for Summary Judgment at 2. The Court notes, however, that "[a]ny ambiguity in the phrase 'legally entitled to recover' must be construed in favor of the insured." *Greenvall v. Maine Mut. Fire Ins. Co.*, 715 A.2d 949, 952 (Me.1998).

assure a person injured by an uninsured motorist that [s]he will … recover, from whatever source available, up to the total amount of his damages," *Peerless Ins. Co. v. Progressive Ins. Co.*, 822 A.2d 1125, 1127 (Me.2003), the Court finds that there are genuine issues of material fact necessitating trial on the merits.

### c. Unfair Claims Settlement Practices

 Plaintiffs Rosemerie and Donald Lamontagne also brought claims, pursuant to 24–A M.R.S.A. § 2436–A, against NAS for unfair claims settlement (Counts IV and VIII). Specifically, Plaintiffs allege that Defendant, by failing to furnish endorsement CA 99 33 07 97, knowingly misrepresented pertinent facts or policy provisions relating to coverage in this case. Title 24–A M.R.S.A. § 2436–A(1)(A) provides that an insurer is liable to its insured for "knowingly misrepresenting … pertinent facts or policy provisions relating to coverage at issue." To establish a knowing misrepresentation, "a plaintiff must provide evidence demonstrating something more than a mere dispute between the insurer and insured as to the meaning of certain policy language." *Curtis v. Allstate Ins. Co.*, 787 A.2d 760, 767 (Me.2002). Plaintiffs have produced evidence that it did not receive the endorsement when it first requested policy provisions from Defendant, and never learned of the endorsement until July 8, 2004, through discovery in this case. Affidavit of Robert A. Laskoff (attached to Docket Item No. 26) ¶ 7–9. Defendant, in turn, relies upon an affidavit filed by its claims adjuster stating that "[m]y decision not to include the 'Employees as Insureds' endorsement was based on the fact that I do not consider

that endorsement relevant to the UM coverage. I had no intention of trying to conceal or misrepresent any pertinent policy provisions relating to the coverage at issue." Affidavit of Dotty Dumaine (Docket Item No. 30) ¶ 6. This affidavit suggests that NAS's failure to furnish the endorsement was not a clerical error, but instead a conscious determination, based upon its own interpretation of 24–A M.R.S.A. § 2902, that the endorsement was not relevant.[5] As a result, there exist genuine issues of material fact as to whether this omission creates liability under section 2436–A(1)(A).

### IV. Conclusion

Defendant's Motion for Summary Judgment be, and it is hereby, **DENIED.**

---

**5.** As the Court notes in part III(b) of this Order, this interpretation does not support a

grant of summary judgment.